# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

JERBEREE JEFFERSON,
Plaintiff-Appellant

v.

SEWON AMERICA, INC.,
Defendant-Appellee

---

On Appeal from the United States District Court
for the Northern District of Georgia Newnan Division
Civil Action No.: 3:15-CV-78-TCB-RGV

---

**Brief of Professor Suja A. Thomas as *Amicus Curiae* in Support of Plaintiff-Appellant Jerberee Jefferson and Reversal of District Court**

---

This Brief has been prepared
with the assistance of the
following students and graduate of the
University of Illinois College of Law:

Jonathan Kim, Diego Martinez-Krippner,
Jani Mikel, Trevor Sierra, and Collin Stich

Suja A. Thomas
PROFESSOR OF LAW
UNIVERSITY OF ILLINOIS
504 East Pennsylvania Avenue
Champaign, IL 61820
(217) 244-7614
sathomas@illinois.edu

*Counsel of Record*

# CERTIFICATE OF INTERESTED PERSONS

In compliance with the Federal Rules of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, the undersigned certifies that the following is a complete list of all trial judge(s), attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal.

1. Barrett & Farahany (Counsel to Plaintiff/Appellant);

2. Honorable Timothy C. Batten, Sr. (United States District Judge);

3. Burr & Forman LLP (Counsel to Defendant/Appellee);

4. Amanda A. Farahany (Counsel to Plaintiff/Appellant);

5. Jon M. Gumbel (Counsel to Defendant/Appellee);

6. Ingu Hwang (Counsel to Defendant/Appellee);

7. Jerberee Jefferson (Plaintiff/Appellant);

8. Adeash A. Lakraj (Counsel to Plaintiff/Appellant);

9. Lisa C. Lambert (Counsel to Plaintiff/Appellant);

10. Law Office of Lisa C. Lambert (Counsel to Plaintiff/Appellant);

11. Sewon America, Inc. (Defendant/Appellee);

12. Sewon Technology Co., Ltd. (Parent Company of Defendant/Appellee); and

13. Honorable Russell G. Vineyard (United States Magistrate Judge).

By: /s/ Suja A. Thomas

Suja A. Thomas

PROFESSOR OF LAW

UNIVERSITY OF ILLINOIS COLLEGE OF LAW

504 East Pennsylvania Avenue

Champaign, IL 61820

(217) 244-7614

sathomas@illinois.edu

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................v

INTEREST OF AMICUS CURIAE ........................................................1

STATEMENT OF THE ISSUES.............................................................1

SUMMARY OF THE ARGUMENT ......................................................2

ARGUMENT ...........................................................................................3

I. THE ISSUE OF WHETHER SUMMARY JUDGMENT IS CONSTITUTIONAL HAS NOT BEEN DECIDED ....................................................................3

   A. The Supreme Court Has Not Determined Whether Summary Judgment is Constitutional Under the Seventh Amendment ...............3

   B. The Eleventh Circuit Has Not Determined Whether Summary Judgment is Constitutional Under the Seventh Amendment ...............7

II. THE CONSTITUTIONALITY OF SUMMARY JUDGMENT SHOULD BE DECIDED AT THIS TIME.............................................................................8

III. SUMMARY JUDGMENT IS UNCONSTITUTIONAL UNDER THE SEVENTH AMENDMENT ............................................................................10

   A. Summary Judgment Violates the First Core Common Law Principle That Only the Jury or the Parties Determined the Facts ....................13

   B. Summary Judgment Breaches the Second Core Common Law Principle That a Court Would Determine Whether Evidence Was Sufficient to Support the Jury Verdict Only After the Parties Presented Evidence at Trial and Only After a Jury Rendered the Verdict. If Insufficient, A Second Jury Would Decide the Case. A Court Itself Could Never Decide the Outcome Upon a Finding that the Evidence was Insufficient ...................................................................................15

   C. Summary Judgment Violates the Third Common Law Principle That a Jury, Not a Court, Decided a Case in Which Any Evidence Was Offered, However Improbable, Unless the Moving Party Admitted All

Facts and Conclusions of the Nonmoving Party, Including Improbable Facts and Conclusions .......................................................................18

IV.    THE REASONABLE JURY STANDARD IS IMPOSSIBLE TO IMPLEMENT AND THEREFORE IS UNCONSTITUTIONAL............................................................19

A. The District Court Used Its Own Opinion of the Plaintiff's Evidence to Decide the Motion for Summary Judgment....................................20

B. What a Reasonable Jury Could Find is Speculative and Not Determinable ........................................................................................22

C. Frequent Disagreement Among Judges on Whether a Case Warrants Summary Judgment Shows the Weakness of the Reasonable Jury Standard .................................................................................................25

CONCLUSION ....................................................................................................26

COMBINED CERTIFICATES .............................................................................27

# TABLE OF AUTHORITIES

## Cases

**Page(s)**

*Alleyne v. United States*,

133 S. Ct. 2151 (2013)........................................................................9

*Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242 (1986)................................................12, 14, 20, 22, 24

*Apprendi v. New Jersey*,

530 U.S. 446 (2000)......................................................................10

*Arthur Rutenberg Homes, Inc. v. Jewel Homes, LLC*,

655 F. App'x 807 (11th Cir. 2016).......................................................7

*Baltimore & Carolina Line, Inc. v. Redman*,

295 U.S. 654 (1935).........................................................................6

*Blakely v. Washington*,

542 U.S. 296 (2004).......................................................................9, 10

*Bowditch v. City of Boston*,

101 U.S. 16 (1879)...........................................................................5

*Boyde v. California*,

494 U.S. 370 (1990)....................................................................23, 24

*Brooks v. Ins. House, Inc.*,

322 F. App'x 782 (11th Cir. 2009) .......................................................7

*Cocksedge v. Fanshaw*,

    99 Eng. Rep. 80 (1779)................................................................14, 18

*Co. of Carpenters v. Hayward*,

    99 Eng. Rep. 241 (1780)...................................................................17

*Fidelity & Deposit Co. v. United States*,

    187 U.S. 315 (1902)......................................................................2, 3

*Galloway v. United States*,

    319 U.S. 372 (1943)......................................................................6, 11

*Garvie v. City of Ft. Walton Beach, Fla.*,

    366 F. 3d 1186 (11th Cir. 2004) ........................................................7

*Gasperini v. Ctr. For Humanities, Inc.*,

    518 U.S. 415 (1996).......................................................................11

*Gibson v. Hunter*,

    126 Eng. Rep. 499 (1793)...........................................................14, 18

*Griggs v Houston*,

    104 U.S. 553 (1881)..........................................................................5

*Harbor Tug & Barge Co. v. Papai*,

    520 U.S. 548 (1997).........................................................................25

*Herbert v. Butler*,

    97 U.S. 319 (1877)............................................................................5

*Harris v. United States*,

    536 U.S. 545 (2002)..........................................................................9

*Home Design Service, Inc. v. Turner Heritage Homes, Inc.*,

825 F. 3d 1314 (2016) ..........................................................................8

*Markman v. Westview Instruments*,

517 U.S. 370 (1996) ..........................................................................11

*Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*,

475 U.S. 574 (1986) ..........................................................................25

*Metropolitan Ry. Co.* v. *Jackson*,

3 App. Cas. 193 (1877) ........................................................................5

*Parklane Hosiery Co. v. Shore*,

439 U.S. 322 (1979) ............................................................................3

*Pleasant v. Benson*,

104 Eng. Rep. 590 (1811) ...................................................................17

*Pleasants v. Fant*,

89 U.S. 116 (1874) ..............................................................................5

*Randall v. Baltimore & O.R. Co.*,

109 U.S. 478 (1883) ........................................................................4, 5

*Ring v. Arizona*,

536 U.S. 584 (2002) ..........................................................................10

*Reeves v. Sanderson Plumbing Prods., Inc.*,

530 US. 133 (2000) ...........................................................................12

*Scott v. Harris*,

550 U.S. 372 (2007) ..........................................................................25

*Seminole Tribe v. Florida*,

    517 U.S. 44 (1996)............................................................10

*Slocum v. New York Life Insurance Co.*,

    228 U.S. 364 (1913)..........................................................6

*Tolan v. Cotton*,

    134 S. Ct. 1861 (2014).....................................................20

*United States v. Booker*,

    543 U.S. 220 (2005)..........................................................9

*Wofsy v. Palmshores Retirement Cmty.*,

    285 F. App'x 631 (11th Cir. 2008)....................................7

## U.S. Constitution

U.S. CONST. amend. VII....................................................2, 10

## Federal Rules

FED. R. CIV. P. 50..............................................................6

FED. R. CIV. P. 56...........................................................6, 12

## Legislation

*The Common Law Procedure Act*, 1854, 17 & 18 Vict., c. 125................................5

*The Summary Procedure on Bills of Exchange Act*, 1855, 18 & 18 Vict., c. 67.......5

## Other Authorities

3 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND *314–15

    (1768)...............................................................13, 15, 16

S AUL B RENNER & H AROLD J. S PAETH , S TARE I NDECISIS : T HE A LTERATION OF

    P RECEDENT ON THE S UPREME C OURT , 1946–92, at 23 (1995) ............................9

F RANCIS B ULLER , A N I NTRODUCTION TO THE L AW R ELATIVE TO T RIALS AT N ISI

    P RIUS 307 (London, A. Strahan & W. Woodfall 1772) ......................................14

B ENJAMIN C ARDOZO , T HE N ATURE OF THE J UDICIAL P ROCESS 13 (1921) ...............24

Edith Guild Henderson, *The Background of the Seventh Amendment*, 80 H ARV . L.

    R EV . 289 (1966) ..........................................................................................16, 17

Dan M. Kahan et al., *Who Eyes Are You Going to Believe? Scott v. Harris and the*

    *Perils of Cognitive Illiberialism*, 122 H ARV . L. R EV . 837 (2009) ......................24

*See* F RANK B. K ELLOGG , A M . B AR A SS ’ N , R EPORT OF THE T HIRTY -S IXTH A NNUAL

    M EETING OF THE A MERICAN B AR A SSOCIATION , 562–71 (1913) .........................7

Norbert L. Kerr et al., *Bias in Judgment: Comparing Individuals and Groups*, 103

    P SYCHOL . R EV . 687 (1996) ...............................................................................23

J AMES O LDHAM , T RIAL BY J URY : T HE S EVENTH A MENDMENT AND A NGLO -

    A MERICAN S PECIAL J URIES 6 (2006) ..................................................................17

R ICHARD A. P OSNER , H OW J UDGES T HINK 68 (2008) .............................................24

Suja A. Thomas, *Summary Judgment and the Reasonable Jury Standard: A Proxy for a Judge's Own View of the Sufficiency of the Evidence*, 97 JUDICATURE 222 (2014) ...................................................................................2, 19, 20

Suja A. Thomas, *The Fallacy of Dispositive Procedure*, 50 B.C. L. REV 759 (2009)2, 19, 20, 23

SUJA A. THOMAS, THE MISSING AMERICAN JURY: RESTORING THE FUNDAMENTAL CONSTITUTIONAL ROLE OF THE CRIMINAL, CIVIL, AND GRAND JURIES (Cambridge Univ. Press 2016) ...................................................................6, 7, 8

Suja A. Thomas, *The Seventh Amendment, Modern Procedure, and the English Common Law*, 82 WASH. U. L.Q. 687 (2004) ................................................4, 11

Suja A. Thomas, *Why Summary Judgment is Unconstitutional*, 93 VA. L. REV. 139 (2007) ...............................................................................2, 3, 10, 18

2 WILLIAM TIDD, THE PRACTICE OF THE COURT OF KING'S BENCH, IN PERSONAL ACTIONS (London, A. Strahan & W. Woodfall 1794)...................................15, 16

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Suja A. Thomas is a Professor of Law at the University of Illinois College of Law. She has been teaching, researching, and writing about the Fifth, Sixth, and Seventh Amendment jury provisions, civil procedure, and employment discrimination for nearly two decades. Her research on the jury has received extensive national attention in federal and state court opinions, in testimony to the U.S. Senate and House of Representatives, and in news outlets such as The New York Times and the Wall Street Journal. Her book *The Missing American Jury: Restoring the Fundamental Constitutional Role of the Criminal, Civil, and Grand Juries* was recently published by Cambridge University Press and her scholarship on the jury has been published in the *Virginia Law Review, Notre Dame Law Review, Washington University Law Review,* and the *Minnesota Law Review,* among other law reviews. She seeks to provide the Court with a description of relevant English common law procedures and principles and to demonstrate the unconstitutionality of summary judgment under the Seventh Amendment.

## STATEMENT OF THE ISSUES

This brief addresses the following issues before the court:

I.      Has the Supreme Court or the Eleventh Circuit decided whether summary judgment is constitutional?

II.     Should the issue of whether summary judgment is constitutional be decided at this time?

III.    Does summary judgment violate the Seventh Amendment?

IV.     Does the reasonable jury standard underlying summary judgment violate the Seventh Amendment?

## SUMMARY OF THE ARGUMENT

Under the conventional wisdom, the Supreme Court decided that summary judgment was constitutional over a century ago in *Fidelity & Deposit Co. v. United States*, 187 U.S. 315 (1902). A review of that case and others, however, reveals that the conventional wisdom is wrong: the Supreme Court has never resolved the constitutionality of summary judgment. Despite uniform acceptance of the procedure, this brief argues that summary judgment is unconstitutional.[1] The Seventh Amendment provides that "[i]n Suits at common law, . . . the right of trial by jury shall be preserved, and no fact tried by jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII. The Supreme Court has held that the phrase "common law" in the Seventh Amendment refers to the English common law in 1791, the date when the Seventh Amendment was adopted. Accordingly,

---

[1] This brief is based on and largely taken from earlier scholarship by Amicus Curiae Professor Suja A. Thomas. *See* Suja A. Thomas, *Why Summary Judgment is Unconstitutional*, 93 VA. L. REV. 139 (2007); Suja A. Thomas, *The Fallacy of Dispositive Procedure*, 50 B.C. L. REV. 759 (2009); Suja A. Thomas, *Summary Judgment and the Reasonable Jury Standard: A Proxy for a Judge's Own View of the Sufficiency of the Evidence*, 97 JUDICATURE 222 (2014). In the interests of simplicity this work is not cited extensively. Instead, where appropriate, underlying primary sources in those works are cited.

procedures that affect the jury trial must be examined to determine whether they violate the "substance" of the common law jury trial. *See infra* Part III. This brief shows that summary judgment violates the core principles or "substance" of English common law jury trial and that no procedure similar to summary judgment existed at English common law. In addition, it argues that the reasonable jury standard underlying summary judgment is impossible to implement and therefore is unconstitutional.

## ARGUMENT

I.  THE ISSUE OF WHETHER SUMMARY JUDGMENT IS CONSTITUTIONAL HAS NOT BEEN DECIDED

A. The Supreme Court Has Not Determined Whether Summary Judgment is Constitutional Under the Seventh Amendment.

The Supreme Court has never actually held that summary judgment is constitutional. *See generally* Suja A. Thomas, *Why Summary Judgment is Unconstitutional*, 93 VA. L. REV. 139, 163–77 (2007). In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), a case examining non-mutual offensive collateral estoppel, the Court stated that summary judgment was constitutional, citing *Fidelity*. 187 U.S. at 315. However, the constitutionality of summary judgment was not decided in *Fidelity*. There, the Supreme Court considered the constitutionality of a rule under which a court could order judgment for the plaintiff without a jury trying the case. Under the rule, the facts alleged by the defendant were accepted as

true. In the case, however, the defendant presented no defense when it did not deny the debt allegedly owed to the plaintiff and thus, the court ruled that the plaintiff prevailed. The procedure that the Supreme Court held constitutional contrasts with summary judgment under Rule 56. Under summary judgment, a court does not simply accept the alleged facts as true. Employing the standard of whether a reasonable jury could find for the plaintiff or defendant, it examines all of the evidence and decides whether it thinks that sufficient evidence supports the claim or defense.

Other Supreme Court cases that the district court or the Eleventh Circuit cited in support of the constitutionality of summary judgment do not actually address summary judgment under Rule 56 at all, but rather examine a different procedure—the court's authority to direct the jury to find for a particular party. First, unlike summary judgment which is employed to dismiss a claim before any trial, this mechanism was used after evidence was presented at trial. Second, the procedure in those cases was constitutional, having been derived from the English common law. *See* Suja A. Thomas, *The Seventh Amendment, Modern Procedure, and the English Common Law*, 82 WASH. U. L.Q. 687, 728–32 (2004). At common law, a court could direct the jury to find for a particular party. The jury often followed but was not required to heed the court's direction. If the jury did not, the court could order a new trial before another jury. *See Randall v. Baltimore & O.R.*

*Co.*, 109 U.S. 478, 481 (1883) ("At the close of the whole evidence . . . the court directed the jury to return a verdict for the defendant, because the evidence was such that if a verdict should be returned for the plaintiff, the court would be compelled to set it aside.");[2] *Griggs v Houston*, 104 U.S. 553, 554 (1881) ("If upon the evidence the jury had brought in a verdict against the defendants it would have been the duty of the court to set it aside and grant a new trial"); *Bowditch v. City of Boston*, 101 U.S. 16, 18 (1879) ("[I]t is the right and duty of the judge to direct the jury to find according to the views of the court."); *Herbert v. Butler*, 97 U.S. 319, 320 (1877) ("[T]he court is not bound to submit the case to the jury, but may direct them what verdict to render."); *Pleasants v. Fant*, 89 U.S. 116, 122 (1874) ("[I]f the court is satisfied that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence is insufficient to warrant a verdict for the plaintiff, the court should say so to the jury."). This procedure contrasts with summary judgment where the jury does not decide.

An additional argument may be attempted to support the idea that the constitutionality of summary judgment has been decided. The standard underlying summary judgment of whether a reasonable jury could find for the nonmoving

---

[2] *Randall* cited *Metropolitan Ry. Co.* v. *Jackson*, 3 App. Cas. 193 (1877). This case is irrelevant to Seventh Amendment jurisprudence, which is based only on the late eighteenth century English common law. Further, the domain of the English jury can be and has been changed by Parliament. *See e.g.*, *The Common Law Procedure Act*, 1854, 17 & 18 Vict., c. 125; *The Summary Procedure on Bills of Exchange Act*, 1855, 18 & 19 Vict., c. 67.

party is the same as the standard underlying the modern directed verdict and judgment notwithstanding the verdict. *See* FED. R. CIV. P. 50, 56. Because of this similarity, one could try to argue that summary judgment is constitutional because the Court has held judgment notwithstanding the verdict constitutional in *Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 659–60 (1935) and the modern directed verdict constitutional in *Galloway v. United States*, 319 U.S. 372, 373 (1943).

However, unlike summary judgment, occurring before trial, those procedures occur at different times in a case—during or after a trial. *See* FED. R. CIV. P. 50. Moreover, under these two devices, a party introduces evidence at trial, and a court reviews the evidence presented at trial. Summary judgment, on the other hand, eliminates a trial entirely and therefore prevents a judge from viewing evidence in the context of a trial.

The Court originally actually deemed judgment notwithstanding the verdict unconstitutional in *Slocum v. New York Life Insurance Co.*, 228 U.S. 364, 399 (1913). Only after a series of seemingly political events, it was overturned in the *Redman* case and the *Galloway* case later following *Redman*. All of this occurred despite the lack of support at English common law for the modern directed verdict and judgment notwithstanding the verdict. *See* SUJA A. THOMAS, THE MISSING AMERICAN JURY: RESTORING THE FUNDAMENTAL CONSTITUTIONAL ROLE OF THE

CRIMINAL, CIVIL, AND GRAND JURIES 80–82, 93–105 (Cambridge Univ. Press 2016); FRANK B. KELLOGG, AM. BAR ASS'N, REPORT OF THE THIRTY-SIXTH ANNUAL MEETING OF THE AMERICAN BAR ASSOCIATION, 562–71 (1913).

### B. The Eleventh Circuit Has Not Determined Whether Summary Judgment is Constitutional Under the Seventh Amendment.

The district court rejected the plaintiff's argument that awarding the defendant summary judgment violated her Seventh Amendment rights, citing three Eleventh Circuit cases: *Brooks v. Ins. House, Inc.*, 322 F. App'x 782, 784 (11th Cir. 2009); *Wofsy v. Palmshores Retirement Cmty.*, 285 F. App'x 631, 635 n.2 (11th Cir. 2008); and *Arthur Rutenberg Homes, Inc. v. Jewel Homes, LLC*, 655 F. App'x 807, 808 n.1 (11th Cir. 2016). However, the Eleventh Circuit, like the Supreme Court has yet to determine the constitutionality of summary judgment. *Brooks*, *Wofsy*, and *Arthur Rutenberg* cite the Supreme Court cases of *Parklane* and *Randall*, which are distinguished above. Moreover, they cite other Eleventh Circuit cases that do not actually hold that summary judgment is constitutional.

In *Brooks* and *Wofsy*, this Court cited *Garvie v. City of Ft. Walton Beach, Fla.*, 366 F. 3d 1186, 1190 (11th Cir. 2004) as a basis for its rejection of the employee's Seventh Amendment arguments. In *Garvie,* however, this Court did not determine that summary judgment was constitutional. In order to do so in accordance with Supreme Court caselaw, it would be required to examine the English common law. It did not. Instead, it recited the standard for summary judgment, stating that

7

summary judgment could be granted "where the material facts concerning a claim cannot reasonably be disputed." As discussed *infra* in Part III, summary judgment violates the substance of the common law. The final case cited by the district court, *Arthur Rutenberg Homes Inc.*, also fails to support the proposition that this Court has determined the constitutionality of summary judgment. In the addition to *Randall* discussed above, *Arthur Rutenberg* relied upon *Home Design Service, Inc. v. Turner Heritage Homes, Inc.*, 825 F. 3d 1314, 1326 (2016). *Home Design Service* concerns judgment notwithstanding the verdict, not summary judgment, and also lacks any constitutional analysis. Although summary judgment is briefly mentioned, again there is no constitutional analysis using the required English common law.

II. THE CONSTITUTIONALITY OF SUMMARY JUDGMENT SHOULD BE DECIDED AT THIS TIME

The constitutionality of summary judgment has not been decided.  At the same time, summary judgment eliminates the jury trial. The founders considered the jury an essential part of the government like the executive, the legislature, the judiciary, and the states. SUJA A. THOMAS, THE MISSING AMERICAN: JURY RESTORING THE FUNDAMENTAL CONSTITUTIONAL ROLE OF THE CRIMINAL, CIVIL, AND GRAND JURIES 80–82, 93–105 (Cambridge Univ. Press 2016). However, unlike the other constitutional actors, the jury relies on the courts to respect and protect its authority. Because courts use summary judgment to dismiss many factually-

intensive cases, especially employment discrimination cases, it is an ideal time for this Court to decide whether the Constitution gives courts summary judgment authority.

Additionally, to the extent this Court believes that the issue of summary judgment's constitutionality actually was decided in the past, the Supreme Court has revisited settled law on a number of occasions. *See* SAUL BRENNER & HAROLD J. SPAETH, STARE INDECISIS: THE ALTERATION OF PRECEDENT ON THE SUPREME COURT, 1946–92, at 23 (1995). Despite the doctrine of *stare decisis*, the Court has overruled prior decisions across a broad spectrum of issues. For example, recently, the Court overruled precedent relating to the role of the jury. *Alleyne v. United States*, 133 S. Ct. 2151, 2163 (2013) (overruling *Harris v. United States*, 536 U.S. 545 (2002) and holding that any fact increasing a mandatory minimum sentence must be submitted to and found true by a jury under the Sixth Amendment). Therefore, even if current precedent exists concerning summary judgment, it should not prevent this Court from revisiting its constitutionality.

Now is a particularly appropriate time to consider whether summary judgment is unconstitutional. In the last two decades, the Supreme Court has taken a renewed interest in the proper role of the jury under the Sixth Amendment. The Court has given power back to the criminal jury while emphasizing the historical role of the jury. *See United States v. Booker*, 543 U.S. 220, 230–34 (2005); *Blakely v.*

*Washington,* 542 U.S. 296, 305–06 (2004); *Ring v. Arizona*, 536 U.S. 584, 607, 609 (2002); *Apprendi v. New Jersey*, 530 U.S. 446, 476–80 (2000).

The Seventh Amendment mandates that the court's role is restricted to its position at "common law." U.S. CONST. amend. VII. Through this "common law" requirement, this Amendment compels an even more significant role for history for the preservation of the right to a civil jury trial than for the right to a criminal jury under the Sixth Amendment. *See Seminole Tribe v. Florida*, 517 U.S. 44, 164 n.59 (1996) (Souter, J., dissenting) (other provisions of the Constitution "may have been inspired by a common-law right" but did not expressly "adopt the common law" like the Seventh Amendment); *infra* Part III. Thus, it is rational and prudent to examine the constitutionality of summary judgment in the context of the Seventh Amendment.

III.  SUMMARY JUDGMENT IS UNCONSTITUTIONAL UNDER THE SEVENTH AMENDMENT

Summary judgment is unconstitutional because it fails to preserve a civil litigant's right to a jury trial under the Seventh Amendment. *See generally* Suja A. Thomas, *Why Summary Judgment Is Unconstitutional*, 93 VA. L. REV. 139 (2007). The Seventh Amendment provides that "[i]n Suits at common law, . . . the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of common law." U.S. CONST. amend. VII. The Supreme Court has held that the

phrase "common law" in the Seventh Amendment refers to the English common law jury trial in 1791, the date when the amendment was adopted. When deciding whether a procedure is constitutional, a court determines whether the "substance" or essentials of the English common law in 1791 are met. *See, e.g.*, *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 436 & n.20 (1996); *Markman v. Westview Instruments*, 517 U.S. 370, 376 (1996); *Galloway*, 319 U.S. at 388–92.

In developing its Seventh Amendment jurisprudence, the Supreme Court has not decided what actually constitutes the substance of the common law. Instead, it has made only piecemeal comparisons between modern procedures and common law procedures to determine whether the modern procedures unduly interfered with the common law right to a jury trial. Under this jurisprudence, despite significant differences between many of the new modern and common law procedures, the Court has upheld the constitutionality of every new procedure that it has considered. *See* Suja A. Thomas, *The Seventh Amendment, Modern Procedure, and the English Common Law*, 82 WASH. U. L.Q. 687, 695–702 (2004).

Although summary judgment did not exist in England in 1791, it could nevertheless be deemed constitutional if it satisfied the substance of the late eighteenth century English common law jury trial. If this Court examines whether summary judgment is constitutional, it will see that it is inconsistent with the

substance of the 1791 common law jury trial and, therefore, violates the Seventh Amendment. First, the rule and standard for summary judgment are undisputed. Under modern summary judgment, a court enters judgment for the moving party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is appropriate when "a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considers the entire record in the light most favorable to the nonmoving party and draws only the "reasonable inferences [from the evidence] in favor of the nonmovant." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 US. 133, 149–50 (2000). In other words, if a court determines that a reasonable jury could not find for the nonmoving party, the court enters judgment for the moving party, and if a court determines that a reasonable jury could find for the nonmoving party, then the case proceeds to a trial before a jury.

This modern summary judgment procedure not only did not exist but is inconsistent with the late eighteenth century English common law. Summary judgment conflicts with the substance of the common law in three fundamental respects. First, summary judgment violates the first core principle of the common law that only the jury or the parties determined the facts. Second, summary judgment breaches the second core common law principle that a court would

determine whether evidence was sufficient to support the jury verdict only after the

parties presented evidence at trial and only after a jury rendered the verdict. Then,

if the court found the evidence insufficient, it could order only a new trial before

another jury. Third, summary judgment violates the third core common law

principle that a jury, not a court, decided a case that had any evidence, however

improbable, unless the moving party admitted all facts and conclusions of the

nonmoving party, including improbable facts and conclusions.

A. Summary Judgment Violates the First Core Common Law Principle That Only the Jury or the Parties Determined the Facts.

English common law procedures such as the demurrer to the pleadings, the

demurrer to the evidence, and the special case reflect this core principle or

substance of the common law that only the jury or the parties determined the facts

and not the court.

At English common law, the demurrer to the pleadings allowed the court to

enter judgment before trial upon a demurring party's admission of the truth of the

plea or declaration of the opposing party. *See* 3 WILLIAM BLACKSTONE,

COMMENTARIES ON THE LAWS OF ENGLAND *314–15 (1768). After the admission,

the court could enter judgment for the demurring party if he was correct or enter

judgment for the opposing party if the demurring party was incorrect. *Id.* Similarly,

under demurrer to the evidence, the demurring party admitted the truth and

conclusions of the evidence that the opposing party presented during the trial and

requested judgment on that evidence. *See* FRANCIS BULLER, AN INTRODUCTION TO THE LAW RELATIVE TO TRIALS AT NISI PRIUS 307 (London, A. Strahan & W. Woodfall 1772). The court accepted as true any fact or conclusion to be drawn from the opposing party's evidence, whether such fact or conclusion was "probable or not." *Cocksedge v. Fanshaw*, 99 Eng. Rep. 80, 88 (1779); *see also Gibson v. Hunter*, 126 Eng. Rep. 499, 510 (1793) (stating that the defendant must admit "every fact, and every conclusion, which the evidence given for the Plaintiff conduced to prove"). The court determined whether a claim or defense existed under the law based on those admitted facts. *See Cocksedge*, 99 Eng. Rep. at 88.

Modern summary judgment, on the other hand, differs significantly from both common law procedures. Under summary judgment, the judge may dismiss a case because she determines that insufficient evidence of the claim exists. By determining whether a reasonable jury could find for the nonmoving party, the court determines the facts and the law, independent of the jury's participation. *Anderson*, 477 U.S. at 248. At common law, the court became involved prior to or during trial only upon the admission by the demurring party of the truth of the plea or declaration of the opposing party (demurrer to the pleadings) or of the facts and conclusions of the opposing party (demurrer to the evidence). The court would then apply the law to the admitted facts and/or conclusions, including improbable ones. At common law, a court never decided a case without a determination of the

facts by the jury or the parties. Summary judgment contradicts with this principle because a judge assesses the facts or evidence of both parties and decides whether a reasonable jury could find for the moving party—all without the required common law determination of the facts by the jury or the parties' agreement.

Another English common law procedure, the special case, reflected the principle that only juries or the parties themselves determined the facts of the case, not the courts. 3 BLACKSTONE, *supra*, at *378. Under the special case, a court would decide a legal issue, but only after a jury or the parties had settled any questions of fact. 2 WILLIAM TIDD, THE PRACTICE OF THE COURT OF KING'S BENCH, IN PERSONAL ACTIONS 577, 598 (London, A. Strahan & W. Woodfall 1794). Indeed, the jury could choose not to send a legal issue to the court. 3 BLACKSTONE, *supra*, at *378. The parties' argumentation on the legal issue was strictly constrained to the case stated from the jury or parties. *Id.* In contrast, under summary judgment, the jury or parties do not decide the facts. 2 TIDD, *supra*, at *598–99.

B. Summary Judgment Breaches the Second Core Common Law Principle That a Court Would Determine Whether Evidence Was Sufficient to Support the Jury Verdict Only After the Parties Presented Evidence at Trial and Only After a Jury Rendered the Verdict. If Insufficient, A Second Jury Would Decide the Case. A Court Itself Could Never Decide the Outcome Upon a Finding that the Evidence was Insufficient.

English common law procedures such as the new trial, nonsuit, and compulsory nonsuit reflect the common law principle that a court would determine whether the

evidence was sufficient only after a jury rendered a verdict and if so, send the case only to a trial before another jury.

At common law, a party could request a court examine the sufficiency of the evidence only after a jury trial had been held and the jury had rendered a verdict against that party. *See* 3 BLACKSTONE, *supra*, at \*387 (1768). If the verdict was strongly against the weight of the evidence, the court would grant the motion and order a new trial before another jury. *See id.* If the second jury agreed with the first, the court would rarely order a third trial. *See id.* at \*372–73, \*387.

Another common law procedure—the nonsuit—allowed a plaintiff to withhold his case from a jury if he believed his evidence was insufficient or he had no claim under law. 2 TIDD, *supra*, at \*577, \*586. If the plaintiff did not appear when his case was called, he would be nonsuited. *Id.* The procedure allowed such plaintiffs to file suit at a later date, rather than risk sending the case to a jury, at which point it could not be tried again. 3 BLACKSTONE, *supra*, at \*376–77. The fundamental difference between the nonsuit and summary judgment is the locus of decision-making. Under the former, plaintiffs were given the discretion to recognize the insufficiency of their evidence and could bring their cases again; under the latter, courts decide and the case cannot be brought again.

At English common law, following a jury verdict for the plaintiff, a defendant could request dismissal by moving for a compulsory nonsuit. *See* Edith Guild

Henderson, *The Background of the Seventh Amendment*, 80 HARV. L. REV. 289, 301 (1966). Under the compulsory nonsuit, which was rarely ordered, the court would enter judgment for the defendant only if the jury's verdict was unsupported by specific, required evidence. *See Co. of Carpenters v. Hayward*, 99 Eng. Rep. 241 (1780); *Pleasant v. Benson*, 104 Eng. Rep. 590, 591 (1811); JAMES OLDHAM, TRIAL BY JURY: THE SEVENTH AMENDMENT AND ANGLO-AMERICAN SPECIAL JURIES 6 (2006). On the other hand, in contrast to summary judgment, a compulsory nonsuit could not be ordered upon an assertion that there was insufficient evidence in support of a claim. Whether there was sufficient evidence was for the jury, not the court, to decide. *See Co. of Carpenters*, 99 Eng. Rep. at 241.

These common law procedures show that the court would not intervene regarding the sufficiency of the evidence until after the evidence was presented at trial and after the jury rendered a verdict. At that point, the court could order only a new trial before another jury.

Summary judgment conflicts with the common law principle that a judge could not decide a case after he determined that the evidence was insufficient. The common law allowed a court to assess the sufficiency of the evidence only after evidence was presented at trial and after the jury rendered a verdict. At that point, if the court found the evidence insufficient, it was required to order a new trial

before another jury. Summary judgment, on the other hand, entirely circumvents this principle by allowing a judge to review the sufficiency evidence before the jury trial and find for one party. *See* Suja A. Thomas, *Why Summary Judgment Is Unconstitutional*, 93 VA. L. REV. 139, 180 (2007).

C. Summary Judgment Violates the Third Common Law Principle That a Jury, Not a Court, Decided a Case in Which Any Evidence Was Offered, However Improbable, Unless the Moving Party Admitted All Facts and Conclusions of the Nonmoving Party, Including Improbable Facts and Conclusions.

At English common law, under the new trial and demurrer to the evidence procedures, as discussed above, a jury would decide cases in which the non-moving party offered any evidence, however improbable that evidence was, unless the moving party had admitted the facts and conclusions of the non-moving party, including improbable facts and conclusions. *Cocksedge*, 99 Eng. Rep. at 88; *see also Gibson*, 126 Eng. Rep. at 510. Summary judgment, on the other hand, allows the court to decide the outcome of the case *without* the moving party admitting the facts and conclusions of the nonmoving party, including the improbable ones.

As a result, modern summary judgment is inconsistent with the English common law in 1791 and inconsistent with the requirements of the Seventh Amendment.

IV.    THE REASONABLE JURY STANDARD IS IMPOSSIBLE TO IMPLEMENT AND
       THEREFORE IS UNCONSTITUTIONAL

The reasonable jury standard, upon which the modern motion for summary

judgment is fundamentally based, is impossible to implement without usurping a

jury's constitutionally-reserved functions. Judges cannot actually determine what a

"reasonable jury" would or would not decide in a particular case. Instead they

decide summary judgment motions based on their own opinions of the evidence.

*See generally* Suja A. Thomas, *The Fallacy of Dispositive Procedure*, 50 B.C. L.

REV 759 (2009); Suja A. Thomas, *Summary Judgment and the Reasonable Jury*

*Standard: A Proxy for a Judge's Own View of the Sufficiency of the Evidence*, 97

JUDICATURE 222 (2014).

Three facts underlie these conclusions. First, when a court purports to decide

whether a reasonable jury could find for the non-moving party, a judge does so by

weighing the evidence in the case and stating whether she thinks there is sufficient

evidence to support the claim. Judges do not actually engage in any analysis

regarding the decision-making process of the jury, reinforcing that judges decide

based on their own view of the evidence. The magistrate and district court judges

in this case acted in this manner. Second, neither the Supreme Court nor the

Eleventh Circuit has shown how judges can determine what a "reasonable jury"

could find. Any attempt to do so would be speculative. Third, the fact that judges

regularly disagree on the conclusion that a reasonable jury could reach further

supports that judges decide based on their own opinions. *See* Suja A. Thomas, *The Fallacy of Dispositive Procedure*, 50 B.C. L. REV. 759 (2009); *see also* Suja A. Thomas, *Summary Judgment and the Reasonable Jury Standard: A Proxy for a Judge's Own View of the Sufficiency of the Evidence*, 97 JUDICATURE 222, 226 (2014). Consequently, the reasonable jury standard simply serves as a proxy for a judge's own view of a case, which is prohibited.

A. The District Court Used Its Own Opinion of the Plaintiff's Evidence to Decide the Motion for Summary Judgment.

Both the magistrate judge's Final Report, Recommendation, and Order (the "R&R") and the district court's Order ("Order") for summary judgment contain personal judgments about the sufficiency of the plaintiff's evidence. However, the Supreme Court's articulation of the reasonable jury standard prohibits judges from using their own opinions to decide the sufficiency of the evidence upon a summary judgment motion. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866–68 (2014) (reversal after lower court relied on its own views); *Anderson*, 477 U.S. at 249–52. Here, the language of the R&R adopted by the district court suggests that both the magistrate judge and the district court used their own opinions of the evidence to come to the decision.

For example, when rejecting elements of Jefferson's prima facie case of discrimination, the magistrate judge concluded, "[Jefferson] has not shown that she

was qualified for the IT position at issue." R&R at 42. Specifically addressing an information technology skills test, the R&R reasoned:

> With respect to her poor performance on the IT test, Jefferson claims that Chung told her that it would have no impact on whether she would be transferred to the IT position, but Chung testified that Jefferson performed so poorly that he no longer had any interest in employing her for the IT position.

*Id.* at 43–44 (citations omitted). It is unclear from these competing claims which representation concerning the test is accurate. Indeed, it is a quintessential jury question. The R&R does not make clear whether a reasonable jury could agree with Jefferson's interpretation of the test's significance, or whether Chung's testimony supports the decision for summary judgment. However, the question simply is one of fact for the jury, not the judge.

Justice William Brennan expressed concerns about the summary judgment standard in *Anderson*:

> I simply cannot square the direction that the judge "is not himself to weigh the evidence" with the direction that the judge also bear in mind the "quantum" of proof required and consider whether the evidence is of sufficient "caliber or quantity" to meet that "quantum." I would have thought that a determination of the "caliber and quantity," *i.e.*, the importance and value, of the evidence in light of the "quantum," *i.e.*, amount "required," could *only* be performed by weighing the evidence. . . . I am fearful that this new rule—for this surely would be a brand new procedure—will transform what is meant to provide an expedited "summary" procedure into a full-blown paper trial on the merits.

477 U.S. at 266–67. Here, the magistrate judge weighed the evidence, supplanting the jury's function. Also, at no point in their analyses do the magistrate judge or the district court explain how a jury itself might analyze the evidence and deliberate about the matter.

B.  What a Reasonable Jury Could Find is Speculative and Not Determinable

The district court did not show that "a reasonable jury" could not find for the plaintiff. Indeed, the Supreme Court and the Eleventh Circuit have not given any direction on how courts are to decide what a reasonable jury could find. It is in fact an impossible determination.

This indeterminability led the district court to grant summary judgment to the defendant Sewon based on its own opinions of Jefferson's evidence of discriminatory failure-to-hire and retaliation—not based on what a reasonable jury could find in the case. The district court's use of a variety of phrases shows that it employed its own opinions on summary judgment. It first stated that Jefferson "ha[d] not adduced evidence from which a reasonable jury could conclude" that Sewon's defense to plaintiff's claim was pretextual. Order at 5. One page later, the district court agreed with the R&R's recommendation for summary judgment, "because there is no evidence from which a reasonable juror could conclude that Jefferson suffered an adverse employment action." *Id.* at 6. What a reasonable jury could find, which involves deliberation, could be different from what a reasonable

juror could find. Suja A. Thomas, *The Fallacy of Dispositive Procedure*, 50 B.C. L. REV. 759 (2009). Later, the district court stated the standard as whether, "the evidence would permit a reasonable factfinder to conclude" in the plaintiff's favor. Order at 12 (citations omitted). What a reasonable jury could find, again involving deliberation, could also be different from what a reasonable factfinder could find. Finally, in response to Jefferson's retaliation claim, the district court again referred to both "a reasonable factfinder" and "a reasonable juror." *Id.* at 18.

The Supreme Court has recognized significant differences between the terms "reasonable juror" (and arguably reasonably factfinder) and "reasonable jury." *See Boyde v. California*, 494 U.S. 370, 380–81 (1990) (discussing various terms used to set the legal standard for evaluating jury instructions regarding a death sentence). A reasonable juror or reasonable factfinder differs from a reasonable jury in fundamental ways. First, the manner in which an individual makes a decision is distinct from the variety of processes by which a group makes a decision. *See* Norbert L. Kerr et al., *Bias in Judgment: Comparing Individuals and Groups*, 103 PSYCHOL. REV. 687 (1996). As the Court stated in *Boyde*:

> "[j]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting."

494 U.S. at 380–81. An "inquiry dependent on how a single hypothetical 'reasonable' juror could or might have interpreted" the question is inappropriate. *Id.* at 380. How a reasonable jury could decide is the one correct inquiry. *Anderson*, 477 U.S. at 248. The district court's interchangeable use of reasonable juror, reasonable factfinder, and reasonable jury conflated their distinct meanings and showed that the court simply based its decision on the court's own view of the evidence.

Even if the Supreme Court or the Eleventh Circuit attempted to provide guidance on determining what a reasonable jury could find, this task is impossible. Judge Posner and Judge Cardozo have recognized that each of us see from our own viewpoints, as much as we may try to see from another's viewpoint. *See* RICHARD A. POSNER, HOW JUDGES THINK 68 (2008) (quoting BENJAMIN CARDOZO, THE NATURE OF THE JUDICIAL PROCESS 13 (1921)); *see also* Dan M. Kahan et al., *Who Eyes Are You Going to Believe?* Scott v. Harris *and the Perils of Cognitive Illiberialism*, 122 HARV. L. REV. 837, 881–902 (2009). Accordingly, courts—and the district court here—decide summary judgment based on their own opinions, not based on what a reasonable jury could decide.

C. Frequent Disagreement Among Judges on Whether a Case Warrants
   Summary Judgment Indicates the Weakness of the Reasonable Jury
   Standard.

Finally, judges who assess the same case routinely disagree on what such a

reasonable jury could conclude. This fact shows that they decide based on their

own opinions. For example, in *Scott v. Harris*, 550 U.S. 372, 374–86 (2007), a

judge in the district court, three judges in the Court of Appeals, and Justice Stevens

all found that a reasonable jury could find for the plaintiff, while eight justices of

the Supreme Court reached the opposite conclusion. *See also Harbor Tug & Barge*

*Co. v. Papai*, 520 U.S. 548, 560 (1997); *Matsushita Electronic Industrial Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574 (1986). In his *Scott* dissent, Justice Stevens

wrote, "[i]f two groups of judges can disagree so vehemently about the nature of

the pursuit and the circumstances surrounding that pursuit, it seems eminently

likely that a reasonable juror could disagree with this Court's characterization of

events." 550 U.S. at 396. Indeed, Justice Stevens seemed to recognize that judges

are not actually deciding what a reasonable jury could find but are deciding only

what they individually think of the plaintiff's evidence. *See id.*; *see, e.g.*, *Scott*, 550

U.S. at 383–86 (Justice Scalia describing what he saw). Thus, the reasonable jury

standard is unconstitutional because judges decide, using their own opinions of the

evidence, not based on what a reasonable jury could find.

**CONCLUSION**

I respectfully submit that this Court should undertake to decide whether summary judgment is consistent with the constitutional mandate of the Seventh Amendment and I further respectfully submit that this Court should conclude that it is not.

Dated: August 3, 2017                              Respectfully submitted,

By: _____ /s/ Suja A. Thomas
Suja A. Thomas
PROFESSOR OF LAW
UNIVERSITY OF ILLINOIS COLLEGE OF LAW
504 East Pennsylvania Avenue
Champaign, IL 61820
(217) 244-7614
sathomas@illinois.edu

## COMBINED CERTIFICATES

1.      <u>Independent Authorship</u>. No party's counsel authored this brief, in whole or in part or contributed money intended to fund preparing or submitting the brief. Further, no person other than amicus curiae has made a monetary contribution toward the preparation or submission of this brief. The law firm of Cravath, Swaine & Moore LLP has graciously agreed to handle the filing and service of this brief on behalf of amicus curiae on a pro bono basis because *amicus curiae* worked for Cravath in the past. It is not involved in this case as counsel or otherwise.

2.      <u>Type-Volume Limitations</u>. I certify that this brief complies with the type-volume and word limit set forth in Fed. R. App. P. 32(a)(7)(B) of the Federal Rules of Appellate Procedure. As measured by the word-processing system used to prepare this brief, this brief contains 6242 words, excluding portions of the brief exempted from such limitations by Fed. R. App. P. 32(f).

3.      <u>Typeface and Type-Style</u>. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6). It was prepared using a 14-point, proportionally spaced typeface set in a roman style.

4.      <u>Filing</u>. In accordance with Fed. R. App. P. 25(a)(2)(B)(ii) and

11th Cir. R. 31-3, on August 3, 2017, an original plus six copies of the foregoing brief were dispatched to the Clerk of the Court via third-party commercial carrier for delivery on August 4, 2017.

5.    <u>Service</u>. I hereby certify that on August 3, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Signed this August 3, 2017.

By:_____/s/ Suja A. Thomas
Suja A. Thomas
PROFESSOR OF LAW
UNIVERSITY OF ILLINOIS COLLEGE OF LAW
504 East Pennsylvania Avenue
Champaign, IL 61820
(217) 244-7614
sathomas@illinois.edu